# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Denise Renne Hastings,**

    **Plaintiff,**

**v.**                                                                                                                         **Case No. 13-1097-JWL**

**Carolyn W. Colvin,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Denise Renne Hastings brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the decision of defendant, the Commissioner of Social Security, to deny her application for social security disability insurance benefits under Title II of the Social Security Act. According to plaintiff, defendant's conclusion that plaintiff retained the residual functional capacity to perform certain light and sedentary jobs available in the national economy is not supported by substantial evidence. As explained in more detail below, the court rejects plaintiff's argument and affirms defendant's decision.

## I.    Procedural Background

On March 1, 2010, plaintiff filed an application for disability insurance benefits alleging disability beginning on September 28, 2007 based on injuries to her left shoulder and left arm.[1] The application was denied both initially and upon reconsideration. At plaintiff's request, an

---

[1] Plaintiff alleged numerous other impairments in her application that are not pertinent to the issues here.

administrative law judge ("ALJ") held a hearing on November 22, 2011, at which both plaintiff and her counsel were present. On January 27, 2012, the ALJ rendered a decision in which she determined that plaintiff was not under a "disability" as defined by the Social Security Act from September 28, 2007 through the date last insured. Consequently, the ALJ denied all benefits to plaintiff. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council. The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of defendant.

## II. Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards. *See Wells v. Colvin*, 727 F.3d 1061, 1067 (10th Cir. 2013) (citing *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)). The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Wilson*, 602 F.3d at 1140). In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant. *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008).

## III. Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

A "disability" for purposes of the Social Security Act requires both the "inability to engage in any substantial gainful activity" and "a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." *Bussell v. Astrue*, 463 Fed. Appx. 779, 781 (10th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)). The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Wilson*, 602 F.3d at 1140 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B))).

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled, *see id.* at 1139, and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Id.* Step one requires the claimant to show that he or she is not presently engaged in substantial gainful activity. *Id.* Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step. The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments" that significantly limits his or her ability to perform basic work activities. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). The ALJ in this case concluded that plaintiff had several severe impairments for purposes of the regulations, including left shoulder and left wrist injuries; bipolar disorder with depressed mood; and anxiety disorder. Thus, the ALJ proceeded to step three.

In step three, the ALJ determines whether the impairment "is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." *Best-Willie v. Colvin*, 514 Fed. Appx. 728, 733 (10th Cir. 2013). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Id*. If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment or combination of impairments prevents him from performing his [or her] past work." *Wilson*, 602 F.3d at 1139 (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). With respect to the third step of the process in this case, the ALJ determined that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations.

At the fourth step, the ALJ determined that plaintiff retained the residual functional capacity (RFC) for light work as defined in 20 C.F.R. §§ 404.1567(b) except, as pertinent to plaintiff's specific arguments here, that she was limited to "no more than frequent overhead reaching and handling with the left arm and hand; and should avoid left handed work above the shoulder level or with the left hand more than 24 inches from the body; [should avoid] activity requiring forceful and prolonged left handed grip; and [should avoid] repetitive activity with the left hand and arm." Based on evidence adduced at the hearing from a vocational expert (VE), the ALJ concluded that plaintiff, with those limitations, could not perform her past relevant work.

Thus, the ALJ proceeded to the fifth and final step of the sequential evaluation process– determining whether the claimant has the residual functional capacity "to perform work in the national economy, given her age, education, and work experience." *See id*. (quoting *Lax*, 489

4

F.3d at 1084). At that point, the ALJ properly shifted the burden of proof to defendant to establish that plaintiff retains a sufficient capacity to perform an alternative work activity and that there are sufficient jobs in the national economy for a hypothetical person with the claimant's impairments. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). At this step, the ALJ concluded that plaintiff was not disabled, a conclusion that rested on a finding that plaintiff could perform certain light and sedentary jobs available in the national economy, including performing work as an electrical assembler; a marker; a polisher; and a document preparer.

## IV. Analysis of Plaintiff's Specific Argument

In her motion, plaintiff contends that defendant's conclusion that plaintiff retained the residual functional capacity to perform certain light and sedentary jobs available in the national economy is not supported by substantial evidence. Specifically, plaintiff argues that the ALJ, in determining plaintiff's RFC, improperly accepted the VE's definitions of certain terms utilized in the medical records and further erred by not posing hypothetical questions to the VE which fully accounted for her limitations. As will be explained, the court rejects both arguments.

The ALJ's first hypothetical to the VE assumed that plaintiff had the residual functional capacity described in Exhibit 8F including a limitation on plaintiff's "reaching all directions (including overhead)" and "handling (gross manipulation)" with her left arm and hand. Specifically, Exhibit 8F noted that plaintiff's performance of these activities was "limited to frequently." The term "frequently" as defined in Exhibit 8F means "occurring one-third to two-thirds of an 8-hour workday (cumulative, not continuous)." The VE testified that a person with

5

plaintiff's age, education, work experience and physical limitations could perform jobs that existed in the national economy.

The ALJ then posed a second hypothetical question to the VE, asking whether the VE's answer to the first hypothetical question would change at all if, in addition to the limitations set forth in the first hypothetical, the VE considered the further limitations noted after an independent medical examination conducted by Dr. Paul Stein and reflected in Exhibit 5F, including permanent work restrictions as follows:

> 1. Avoid left handed work above shoulder level or with the left hand more than 24 inches from the body. 2. Avoid activity requiring forceful and prolonged left handed grip. 3. Avoid repetitive activity with the left hand and arm.

Exhibit 5F at p. 7. The VE testified that the first restriction reflected in Exhibit 5F was different than the restriction in Exhibit 8F (in terms of overheard level versus shoulder level) but that the difference "doesn't make a lot of difference." With respect to the second and third restrictions in Exhibit 5F, the VE testified that without clarification from Dr. Stein on what he meant by "forceful," "prolonged" and "repetitive," he would assume that "forceful" meant "more than 80 kilograms;" that "prolonged" meant "more than two hours at one time;" and that "repetitive" meant "less than constant." When asked by the ALJ if the job based was further reduced based on Dr. Stein's restrictions, the VE testified that "it would be about the same, but I really would need to know more of a clarification from Dr. Stein on 'forceful' and 'prolonged.'" The VE further testified that although the DOT does not define the terms "repetitive," "prolonged" or "forceful," he defined those terms based on his 20-plus years of experience in job placement, ergonomics and other on-the-job services.

Plaintiff contends that the ALJ, in determining plaintiff's RFC, improperly allowed the VE to make his own assumptions about what Dr. Stein meant when he used the terms "repetitive," "forceful," and "prolonged" and that the definitions utilized by the VE are not accurate definitions of those terms. Plaintiff does not offer any support for her argument that the VE's definitions were inaccurate in any respect. Moreover, it is entirely appropriate for the VE to define the terms utilized by Dr. Stein. *See Summerall v. Astrue*, 2011 WL 1259705, at *11-13 (M.D. Fla. 2011) (rejecting plaintiff's argument that it is "not the role of the VE to interpret what a doctor meant in opining that a claimant cannot repetitively use his or her hands"; vocational definition provided by VE was appropriate); *see also Gallegos v. Barnhart*, 99 Fed. Appx. 222, 224 (10th Cir. June 2, 2004) (VE properly construed the term "repetitive" as used in opinion of examining doctor).

Plaintiff next argues that the ALJ erred by not posing hypothetical questions to the VE which fully accounted for her limitations, including a purported restriction on "frequent bilateral use of the hands." By way of background, plaintiff's counsel at the administrative hearing asked the VE whether the jobs identified by him that plaintiff could perform would require frequent bilateral use of the hands. The VE testified that the jobs would likely require frequent bilateral use of the hands. Plaintiff's counsel then asked, in light of Dr. Stein's restriction on "repetitive" use of the left hand and arm, whether the jobs would be precluded if Dr. Stein defined "repetitive" as "frequent." The VE testified that, in such circumstance, the jobs would be precluded. There is no evidence, of course, that Dr. Stein considered "repetitive" the same as "frequent" and, for purposes of the Social Security Act, the terms are not synonymous. *Gallegos*, 99 Fed. Appx. at 224, 226 ("frequent" and "repetitive" have distinct legal definitions;

an activity that is performed "frequently" is performed only one-third to two-thirds of the time; an activity that is "repetitive" is performed two-thirds to 100 percent of the time). Thus, plaintiff's inability to perform repetitive bilateral hand motions would not preclude a job that required frequent bilateral use of the hands and the ALJ did not err by failing to include that restriction in the RFC.

In sum, having carefully reviewed the record in this case and having considered plaintiff's arguments in light of the record, the court concludes that substantial evidence supports defendant's decision to deny Ms. Hastings' application for disability benefits and that no deviation from established legal standards occurred.


**IT IS THEREFORE ORDERED BY THE COURT THAT** judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's final decision.


**IT IS SO ORDERED.**


Dated this 6th day of December, 2013, at Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge